**Kathryn "Kaz" LEATHERMAN,**
**Appellant,**

v.

**Fred RANGEL, Appellee.**

**No. 06–98–00085–CV.**

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 3, 1998.

Decided Feb. 3, 1999.

Rehearing Overruled Feb. 3, 1999.

Clayton E. Dark, Lufkin, for appellant.

Merle Faye Hoffman, Austin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Justice GRANT.

Kathryn Leatherman appeals from the granting of a summary judgment in favor of Fred Rangel. Leatherman contends that (1) she had not been allowed an adequate opportunity for discovery before the summary judgment was granted, and (2) she raised a genuine issue of material fact in response to Rangel's motion for summary judgment.

A letter criticizing the Angelina County Department of Community Supervision and Correction (CSCD), signed by Traci Daniel, was sent to the district judges of Angelina County, who were responsible for supervising the CSCD. A typewritten draft of the letter contained Leatherman's handwriting. Leatherman alleges that she simply helped Daniel, who was resigning, edit the letter which Daniel had already drafted and intended to send to the district judges upon her resignation. Rangel, the director of the CSCD and Leatherman's superior, investigated the matter. Leatherman was terminated on February 27, 1997 by Rangel from her position with the CSCD. Rangel claimed that Leatherman had written the unflattering letter to the district judges in violation of departmental policies. Rangel provided Leatherman with a termination memorandum which stated in part:

You [Leatherman] have engaged in serious unethical and unprofessional conduct by writing a letter containing false allegations and misrepresentations of the integrity, character, and credibility of three male Administrators of the Department; and

. . . .

. . . your actions has (sic) called to question your character, integrity, and loyalty as an employee which will not be tolerated.

On March 25, 1997, Leatherman filed suit against Rangel for libel, slander, and intentional infliction of emotional distress. Rangel filed an answer on April 21, 1997. Leatherman's and Rangel's depositions were apparently taken in mid-December 1997. Rangel filed a motion for summary judgment on December 29, 1997. Leatherman sought a continuance of the hearing on the motion for summary judgment on January 16, 1998. On January 20, 1998, Leatherman filed her response to the motion for summary judgment. The hearing was held on January 26, 1998, and the judge granted the motion for summary judgment on February 27, 1998, without stating the basis for his decision.

On March 18, 1998, Leatherman filed a motion to vacate the summary judgment in favor of Rangel because the order did not state reasons for granting the motion, and the judge had not yet ruled upon Leatherman's motion for continuance or request to conduct additional discovery, which were both pending at the time the summary judgment was granted. Thereafter, on March 25, 1998 the trial court vacated the order granting the motion for summary judgment and then, on March 30, overruled Leatherman's motion for continuance and motion to supplement the record. The trial court then again granted Rangel's motion for summary judgment on April 4, 1998 and specified the reasons for granting the motion as follows:

The alleged defamatory statements are subject to qualified privilege; Defendant Fred Rangel is entitled to the affirmative defense of quasi-judicial immunity because he was acting at all times in good faith within the scope of his discretionary authority; Plaintiff is unable to overcome Defendant's entitlement to quasi-judicial immunity; Defendant's actions were not extreme and outrageous.

Appeal was taken from this April 4, 1998 ruling.

Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled

to judgment as a matter of law.[1] The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law.[2] A party moving for summary judgment has the burden of establishing both the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law.[3] In deciding whether there is a disputed issue of material fact precluding summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in the nonmovant's favor.[4] An appellate court will not consider evidence that favors the movant's position unless it is uncontroverted. When a defendant moves for summary judgment on the basis of an affirmative defense, the defendant must conclusively prove all essential elements of that defense.[5] We must consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal when reviewing a summary judgment.[6] In the interest of judicial economy, we may consider other grounds that the movant preserved for review and that the trial court did not rule upon.[7]

In her first point of error, Leatherman argues that the granting of a no-evidence summary judgment under Tex.R. Civ. P. 166a(i) was improper because she did not have enough time to conduct discovery. However, the order granting summary judgment in favor of Rangel does not state that the summary judgment was granted based upon Leatherman's lack of evidence to support her claims, but rather, the reasons given by the trial court for granting the summary judgment motion are based upon the trial court's determination of other questions of law. This Court need not conduct a no-evidence summary judgment analysis since this did not provide the basis for the trial court's decision.

■ In the second point of error, Leatherman claims that the trial court erred in granting a summary judgment in favor of Rangel because Leatherman raised a genuine issue of material fact in response to Rangel's motion. However, in the present case, the summary judgment stands on Rangel's assertion of qualified privilege. A qualified privilege extends to communications made in good faith on a subject in which the author has an interest or a duty, to another person having a corresponding interest or duty.[8] The privilege is peculiarly applicable to communications between employers and employees.[9] To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice.[10] In a summary judgment context, when the defamation defendant offers evidence that is "clear, positive, and direct," even from an

1. Tex.R. Civ. P. 166a(c); *Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex.App.-Texarkana 1989, no writ).

2. *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990).

3. Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990).

4. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

5. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

6. Tex.R. Civ. P. 90(a).

7. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

8. *Dixon v. Southwestern Bell Telephone Co.*, 607 S.W.2d 240 (Tex.1980); *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197 (Tex.App.-Texarkana 1993, writ denied); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558 (Tex.App.-Dallas 1989, no writ); *Houston v. Grocers Supply Co.*, 625 S.W.2d 798 (Tex.App.-Houston [14th Dist.] 1981, no writ); *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814 (Tex.Civ.App.-Tyler 1980, no writ).

9. *See Dixon v. Southwestern Bell Telephone Co.*, 607 S.W.2d 240; *Bergman v. Oshman's Sporting Goods, Inc.*, 594 S.W.2d 814.

10. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995).

interested witness, as to the lack of actual malice, the plaintiff must offer controverting proof to establish a fact issue as to malice to avoid summary judgment.[11] Actual malice is not ill will; it is the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.[12] Where the facts are undisputed and the statements are not ambiguous, the question of privilege is one of law for the court.[13]

Leatherman contends that the comments in the February 27 memo formed, in part, the basis for her libel, slander, and intentional infliction of emotional distress claims. Leatherman also contends that Rangel slandered her when he spoke with her immediate supervisor, Karen Bowser, concerning his suspicions with regard to the authorship of the derogatory letter about the management of the department.

■ Once Rangel received information that Leatherman had participated in writing the letter, he was privileged to investigate the matter. In his affidavit, Rangel states that he discussed Leatherman's participation in writing the derogatory letter with Bowser and other members of the management team. Rangel further states that he hand delivered to Leatherman a copy of the February 27 memo terminating her and placed a copy of the memo in her personnel file. According to the affidavit testimony, Rangel did not show the termination letter to anyone else, nor did he discuss the letter with anyone else. Rangel stated that he believed that Leatherman had participated in writing the letter and that such participation violated departmental policy. After investigating the matter, Rangel stated that he felt that it was in the best interest of the department to terminate Leatherman. Rangel's affidavit establishes, as a matter of law, that he did not believe the allegations were false and did not act with reckless disregard as to their truth or falsity in repeating those allegations in his investigation.

■ In response to Rangel's motion for summary judgment, Leatherman failed to allege concrete facts which would raise a genuine issue of material fact of whether Rangel acted with actual malice. In her brief, Leatherman alleges that Rangel "set about to develop a program and plan to libel, slander, disparage, and inflict harm" upon her. In support of this allegation, Leatherman cites to her own affidavit. However, her affidavit fails to allege controverting facts which would lead to the conclusion that Rangel did, in fact, set out with such intentions. Leatherman's affidavit does not contain any factual allegations that Rangel published statements about Leatherman with knowledge that it was false or with reckless disregard for the truth. Leatherman does list specific actions that she believes Rangel should have taken and argues that failure to take these actions indicates that Rangel acted with malice. These omitted actions are: (1) Rangel's failure to conference with Traci Daniel concerning the authorship of the letter; (2) his failure to include Karen Bowser, Leatherman's direct supervisor, in the termination decision; and (3) his failure to ask Leatherman herself about her involvement with the letter. Failure to act as Leatherman suggests does not indicate that Rangel acted with malice in publishing statements about her to other management personnel in the course of his investigation. Although Leatherman contends that the statements made by Rangel in the memorandum of termination were not true, malice cannot be inferred from falsity of the statement alone.[14]

Therefore, this Court concludes, as a matter of law, that even if the statements were defamatory, they were privileged and not made with malice.

■ Additionally, Leatherman alleges that it is likely that a copy of the termination letter in her personnel file will be disclosed sometime in the future. To the extent that a plaintiff seeks relief based upon facts that

---

11. *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989).

12. *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex. 1989).

13. *Denton Publishing Co. v. Boyd,* 460 S.W.2d 881 (Tex.1970).

14. *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 631 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.).

have not yet occurred, there is no live controversy between the parties.[15] Essentially, Leatherman is alleging "anticipatory defamation" as a cause of action. It would be improper for this Court to address an injury which has not yet occurred and which, in fact, may never occur.

In a separate claim, Leatherman contends that Rangel intentionally inflicted emotional distress upon her. In granting the summary judgment, the trial court found that Rangel's actions were not extreme and outrageous. In order to prevail on a claim of intentional infliction of emotional distress, a claimant must show (1) the defendant acted intentionally or recklessly; (2) the conduct of the defendant was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.[16] The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[17] Leatherman alleges that Rangel made false, misleading, and untrue statements about her, directed other employees to assist in the investigation in order to implement his scheme to cast Leatherman in a false light, and violated confidentiality provisions of the CSCD.

The present case is similar to *Wornick Co. v. Casas*.[18] In *Wornick*, an employee was terminated after a brief, private meeting with her supervisor. The termination was unexpected. The employee was told that she was being terminated because the employee had allegedly been disloyal to the company, exhibited a bad attitude, and had failed to perform certain assigned tasks. The employee was given five minutes to gather personal belongings and was escorted from the building by security. In reviewing Casas's claim for intentional infliction of emotional distress, the Supreme Court found that, as a

matter of law, the company's conduct was not outrageous.

The conduct alleged in the present case is similar to the events of *Wornick*. Leatherman was unexpectedly terminated in a private meeting with Rangel after he had investigated the situation and discussed it with other managers. Rangel gave Leatherman a termination memorandum, which was given only to her and placed in her personnel file. The trial court did not err in finding that, as a matter of law, Rangel's conduct was not outrageous.

The judgment of the trial court is affirmed.

---

**15.** *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 116 (Tex.App.-El Paso 1997, pet. filed).

**16.** *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993).

**17.** *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993), *quoting* Restatement (Second) of Torts § 46 (1965).

**18.** 856 S.W.2d 732.