In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00224-CR


______________________________




CEDRIC A. HARRIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 26698-A




 




Before Morriss, C.J., Carter, and Cornelius,* JJ.


Memorandum Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment




MEMORANDUM OPINION


 Cedric A. Harris appeals from a trial court order revoking his community supervision
and sentencing him to five years' confinement. Harris raises only one issue on appeal: 
he contends that the trial court abused its discretion in revoking his community supervision. 
Harris raises under this general issue two contentions, (1) that the trial court should have
used alternative sanctions rather than revocation, and (2) that the trial court should have
conducted an inquiry into Harris' competency to stand trial. We overrule these contentions
and affirm the judgment.

 The State alleged that Harris violated seven of the conditions of his community
supervision. The court, after hearing testimony, found that Harris committed four violations
of the terms of his community supervision by (1) knowingly fleeing from a peace officer who
was lawfully attempting to detain him; (2) knowingly damaging tangible personal property
without the consent of the owner, causing pecuniary loss of between $50.00 and
$1,500.00; (3) failing to notify his community supervision officer of his change of address;
and (4) failing to complete community service in the amount and within the time required
by the conditions of his community supervision.

 The evidence that Harris committed these violations is overwhelming and virtually
undisputed, but Harris contends that the trial court's discretion would have been better
exercised if the court had modified or amended the conditions of community supervision. 
However, a trial court does not abuse its discretion in revoking community supervision if
the State proves that the person on community supervision violated one or more of the
conditions of his supervision. Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App.
1980). Moreover, there is no evidence that reasonable, effective alternative measures
were available.

 Harris also contends that the trial court should have conducted an inquiry to
determine if he was competent to stand trial on the revocation application. A trial court
must initiate an inquiry to determine competency only if there is evidence sufficient to
create a bona fide doubt in the judge's mind as to the defendant's competency to stand
trial. Tex. Code Crim. Proc. Ann. art. 46.02, § 2(a), (b) (Vernon 1979); Alcott v. State, 51
S.W.3d 596, 601 (Tex. Crim. App. 2001); Reeves v. State, 46 S.W.3d 397, 399 (Tex.
App.-Texarkana 2001, pet. dism'd).

 Harris suggests that he is "mentally challenged," but there is no clear, direct
evidence that he is mentally ill or retarded. Harris relies on facts that he took some special
education courses in secondary school and that, while attending Kilgore College, he took
regular "low level" courses, as circumstantial evidence that he is retarded. Harris'
community supervision officer testified, however, that there was nothing in her files and she
never had any information indicating that Harris was even mildly retarded.

 On the other hand, evidence showed without dispute that Harris graduated from
high school and attended Kilgore College. His mother testified that he maintained a "C"
average in high school. He has held numerous jobs, he has played football, he drives a
car, and he is able to perform the ordinary tasks that average persons perform. His mother
did testify at one point that Harris "has a problem with understanding things," and on
questioning from Harris' defense counsel as to whether he is mentally retarded, she
answered, "Yes, sir. He has some complications."

 To be incompetent to stand trial, a person must lack sufficient ability to consult with
his lawyer with a reasonable degree of rational understanding, or to have a rational as well
as factual understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art.
46.02, § 1A(a)(1), (2) (Vernon Supp. 2003). We find there is not sufficient evidence in this
record to raise a bona fide doubt as to Harris' competency, so the trial court did not abuse
its discretion in failing to conduct an inquiry into his competency.

 For the reasons stated, we affirm the judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: March 19, 2003

Date Decided: June 12, 2003


Do Not Publish




eWhenUsed="false" Name="Medium List 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00112-CV

                                                ______________________________

 

 

                                      WENDELL WATSON,
Appellant

 

                                                                V.

 

                                 TELECHECK SERVICES, INC., AND 

TRS RECOVERY SERVICES,
INC., Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                          Trial Court
No. 2007-433

 

                                                                                                   

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            This opinion
on rehearing is issued as a substitute for our original opinion issued
September 3, 2010.

            In the
events described by Wendell Watsons pleadings, Watson was gambling at Harrahs
Casino with $1,000.00 in cash he obtained from Harrahs in exchange for his
personal check in that amount, when a dispute arose resulting in Harrahs confiscating
his cash and ejecting him from the premises.  That started a chain of events resulting in
this appeal.

            Because
Harrahs took his cash, Watson stopped payment on his check.  Because Watson stopped payment on his check,
Harrahs called on Telecheck Services, Inc. (Telecheck), a check verification
and warranty company, to purchase the check. 
Telecheck purchased the check; listed Watson negatively in a database
accessed by Telechecks customers; and hired TRS Recovery Services, Inc. (TRS),
to attempt to collect the check from Watson. 
Some merchants refused to take Watsons checks.  Watson contacted Telecheck to dispute the
debt and demand that his negative listing be removed.  Telecheck refused.  Watson sued Telecheck and TRS for defamation,
intentional infliction of emotional distress, violation of the Texas Consumer
Credit Reporting Act, and violation of the Fair Debt Collection Practices Act
(FDCPA), as well as, he claims, illegality and extrinsic fraud.  Telecheck and TRS sought and were awarded a
summary judgment denying all of Watsons claims.[1]

            We
affirm the summary judgment in part and reverse it in part.  As to Watsons cause of action under the
Consumer Credit Reporting Act,[2]
we affirm the summary judgment, because (1) neither defendant is a
consumer reporting agency as defined by the Act.  As to Watsons alleged cause of action for
illegality of contractwhich is not addressed in the summary judgmentwe overrule
Watsons related point of error as moot, because (2) Watson did not plead a
cause of action for illegality of contract. 
As to Watsons cause of action for extrinsic fraud, we affirm the
summary judgment, because (3) Watsons allegation of extrinsic fraud is an
evidentiary issue not preserved for appeal. 
As to all other causes of action[3]
asserted by Watson, we reverse the summary judgment and remand this cause to
the trial court for further proceedings, because (4) there is a fact issue
concerning whether Watson owed a debt, (5) there is a fact issue concerning
whether defendants had actual malice, and (6) there is a fact issue concerning
when Watsons causes of action accrued.

            A trial
courts summary judgment is reviewed de novo.  Frost Natl
Bank v. Fernandez, 315 S.W.3d 494 (Tex. 2010); Tex. Mun. Power Agency v. Pub. Util. Commn, 253 S.W.3d 184, 192
(Tex. 2007).  Summary judgment is proper
when a movant establishes that there is no genuine issue of material fact and
that he or she is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); French v. Gill,
252 S.W.3d 748, 751 (Tex. App.Texarkana 2008, pet. denied); Powers v. Adams, 2 S.W.3d 496, 497 (Tex.
App.Houston [14th Dist.] 1999, no pet.) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)).  The movant has the burden to conclusively
disprove one element of the challenged cause of action or to conclusively prove
all of the elements of an affirmative defense.  Little
v. Tex. Dept of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004); Pustejovsky v. Rapid-Am. Corp., 35
S.W.3d 643, 64546 (Tex. 2000).  In
deciding whether there is a disputed material fact issue which precludes
summary judgment, proof favorable to the nonmovant will be taken as true.  Nixon,
690 S.W.2d at 54849.  We indulge every
reasonable inference in favor of the nonmovant.  Limestone
Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002).  Because the trial courts order does not
specify the grounds for its summary judgment, we must affirm the summary
judgment if any of the theories presented to the trial court are meritorious.  Browning
v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005); Hill v. Bartlette, 181 S.W.3d 541, 544 (Tex. App.Texarkana 2005,
no pet.) (citing Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995)).

(1)        Neither Defendant Is a Consumer
Reporting Agency

 

            Watson
contends that the trial court erred in granting summary judgment because there
are genuine issues of material fact and questions of whether the law was
correctly applied as to whether Telecheck is civilly liable pursuant to
Chapter 20 of the Texas Business and Commerce Code.

            Chapter 20
of the Texas Business and Commerce Code governs the regulation of consumer
credit reporting agencies.  Tex. Bus. & Com. Code Ann. §§ 20.01.13.  A consumer reporting
agency that willfully or negligently violates the provisions of Chapter 20 is
civilly liable to the consumer.  Tex. Bus. & Com. Code Ann. § 20.09.  The term consumer reporting agency, though,
does not include a business entity that provides only check verification or
check guarantee services.  Tex. Bus. & Com. Code Ann. § 20.01(5).  Here, there is no dispute that Telecheck
provides only check verification and guarantee services.

            When
interpreting a statutory provision, we seek to find and apply the intent of the
Legislature; and if the text is unambiguous, we will be guided by the statutes
plain language unless that interpretation would lead to absurd results.  Tex. Dept
of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d
170, 17677 (Tex. 2004); see City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003).  The plain language of Section 20.09 of the
Texas Business and Commerce Code excludes Telecheck from civil liability.  Tex.
Bus. & Com. Code Ann. § 20.09. 
Watson fails to cite to any authority in support of his argument that
Telecheck is liable under Section 20.09 as a consumer reporting agency, and
we find none.  Therefore, Telecheck is
entitled to judgment as a matter of law on this cause of action.

            Further,
nothing in Chapter 20 indicates that a collection and recovery entity, such as
TRS, falls under its purview and authority. 
See Tex. Bus. & Com. Code Ann. §§ 20.01.13.

            Accordingly,
we affirm the summary judgment as to this cause of action.

 

 

 

 

 

 

(2)        Watson
Did Not Plead a Cause of Action for Illegality of Contract

 

            Watson
contends that the summary judgment was erroneous because Telecheck failed to
address his claim of illegality in its summary judgment motion and because genuine
issues of material fact exist regarding contract illegality.

            In its
summary judgment motion, Telecheck directly addressed its affirmative defenses
to each cause of action stated in Watsons fourth amended petition.  A few days later, Watson timely filed his
fifth amended petition and his response to Telechecks motion.  Telechecks motion does not address any claim
of illegality, and Watson argues that the fifth amended petition raised illegality
as a new cause of action.

            Watson
claims his fifth amended petition alleges that Telechecks contracts are
illegal and that Telecheck did not address such allegations in its motion for
summary judgment.  Watsons response to
Telechecks motion states, however, that:

[Watson] has filed his FIFTH AMENDED ORIGINAL
PETITION to alleviate [Telechecks] erroneous conclusions about the allegations
of his action, and respectfully requests that the Court take judicial knowledge
of [Watsons] allegations therein, where causes of action are alleged for (1)
per se defamation; (2) mental anguish and emotional distress; (3)
violations of the Fair Credit Reporting Act; (4) violations of the Consumer
Credit Reporting Agencies [sic] Act; and (5) exemplary damages for acting with
malice and/or violating the aforesaid statutes.

 

By its plain language, Watsons response unambiguously lists
the causes of action he alleges in his fifth amended petition, and the list
does not include a claim that Telechecks contracts are illegal.  A party may not take a position on appeal
that is inconsistent with its position in the trial court.  See
Bulington v. State, 179 S.W.3d 223, 23233 n.7 (Tex. App.Texarkana 2005,
no pet.) (citing Litton Indus. Prod.,
Inc. v. Gammage, 668 S.W.2d 319, 32123 (Tex. 1984)); Nebgen v. Minn. Mining & Mfg. Co., 898 S.W.2d 363, 366 (Tex. App.San
Antonio 1995, writ denied); Stewart &
Stevenson Servs. v. Enserve, Inc., 719 S.W.2d 337, 341 (Tex. App.Houston
[14th Dist.] 1986, writ refd n.r.e.).  Watson
cannot now complain that Telecheck failed to address a cause of action that he
failed to plead at trial.  No issue of
illegality of contract has been pled or ruled on.  Because the trial court did not expressly
grant summary judgment on any such claim, we overrule this point of error as
moot.

(3)        Watsons Allegation of Extrinsic Fraud
Is an Evidentiary Issue Not Preserved for Appeal

 

            Watson
alleges that Telecheck served him with its summary judgment motion and
intentionally removed Exhibits B and C to prevent him from knowing that
Telecheck attached evidence of his criminal history to their summary judgment
evidence.  Watson alleges that complete
copies, containing the missing exhibits, were filed with the trial court.  He argues that Telechecks failure to include
the missing pages in his copy of the motion amounts to extrinsic fraud.

            Exhibit B to
the motion for summary judgment consists of Watsons First Amended and
Supplemented Plaintiffs Answers and Objections to Telecheck Services, Inc. Request for Interrogatories, Admissions
and Production and the various documents attached thereto.  Exhibit C consists of Watsons First
Amended and Supplemented Plaintiffs Answers and Objections to TRS Recovery Services, Inc. Request for
Interrogatories, Admissions and Production and the various documents attached
thereto.  These two exhibits were,
presumably, items with which Watson was quite familiar, having prepared or
produced these items himself.

            To
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling.  See Tex.
R. App. P. 33.1(a); State Dept of
Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (op.
on rehg).  If a party fails to do this,
error is not preserved, and the complaint is waived.  See
Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on rehg).

            Here, the
final summary judgment was signed and filed September 10, 2009.  Watson objected to Telechecks proffered
evidence four days later in a letter dated and filed September 14, 2009.  Even if Watsons allegations are taken as
true, Watson knew or should have known that the exhibits were missing for more
than a month before the trial courts summary judgment decision, and he failed
to inquire or object regarding their contents during that time.  Further, Watson has presented no argument or
authority excusing his failure to make a timely objection.  Because Watsons objection was not timely
made, this issue was not preserved for our review.  We overrule this point of error.

(4)        There Is a Fact Issue Concerning Whether
Watson Owed a Debt

 

            Watson
argues that the summary judgment was erroneous because there is a material
issue of fact regarding the affirmative defense of truth asserted by the
defense in contravention of the defamation cause of action.  The fact question here is whether Watson owed
a debt, as was allegedly uttered when Telecheck negatively listed Watson in its
database or when its customers accessed that database to check on Watsons
listed status.

            For a
private individual to sustain a defamation claim, the plaintiff must prove that
the defendant:  (1) published a false statement;
(2) that was defamatory concerning the plaintiff; (3) while acting with
negligence regarding the truth of the statement.  See
WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998).

            When a check
is presented to a merchant subscribing to Telechecks services, the merchant
scans the check and information from the check is transmitted to Telecheck for
processing.  If Telecheck will warrant
the check, the merchant receives only a single-digit numerical code response of
1, effectively approving the individuals check as payment.  If the processing reveals evidence the check
maker has unpaid check-related debt, Telecheck will not warrant the check and
the merchant receives a single-digit numerical code response of 4.  

            Here, it is
undisputed that Telecheck placed Watson on its negative database, refused to
warrant his checks, and responded to its inquiring merchants with a code 4
regarding Watson, because he had stopped payment on the Harrahs check.  By giving a code 4 response, Telecheck
informed subscribing merchants that Watson had unpaid check-related debt.  Therefore, to successfully assert truth in
its summary judgment proceeding, Telecheck had the burden of conclusively
proving, through its summary judgment evidence, that Watson owed unpaid
check-related debt.

            Watson
has consistently denied owing a debt related to the Harrahs check, and he
alleged that he stopped payment on the check because Harrahs confiscated the
funds for which it was written.  In its
motion for summary judgment, Telecheck acknowledged that the debt is in dispute
and failed to produce any evidence to the contrary.  Because Telecheck has failed to conclusively
prove that Watson owed a check-related debt, we sustain Watsons point of error
on this issue.

(5)        There
Is a Fact Issue Concerning Whether Defendants Had Actual Malice

 

            Watson also
argues that the summary judgment on qualified privilege as a defense to his
defamation claim was improper because Telecheck failed to conclusively prove an
absence of malice.[4]

            A qualified
privilege extends to statements made in good faith on a subject in which the
maker has an interest or duty, to another person having a corresponding
interest or duty.  Dixon v. Sw. Bell Tel. Co., 607 S.W.2d 240 (Tex. 1980); Leatherman v. Rangel, 986 S.W.2d 759 (Tex.
App.Texarkana 1999, pet. denied); Martin
v. Sw. Elec. Power Co., 860 S.W.2d 197 (Tex. App.Texarkana 1993, writ
denied).  To establish a qualified
privilege in a summary judgment proceeding, the defendant has the burden to
conclusively establish that the allegedly defamatory statement was made in the
absence of actual malice.  Randalls Food Mkts., Inc. v. Johnson,
891 S.W.2d 640, 646 (Tex. 1995); see also
Dixon, 607 S.W.2d at 242.  Malice
means the defendant made the defamatory statement with knowledge of its falsity
or in reckless disregard as to its truth.  Thomas-Smith
v. Mackin, 238 S.W.3d 503 (Tex. App.Houston [14th Dist.] 2007, no pet.).

            In the
absence of controverting evidence, an affidavit revealing the allegedly
defamatory statements sources as reliable, identified sources and denying
any doubts as to the truth of the published statement is sufficient to negate
actual malice, as a matter of law.  Mitre v. La Plaza Mall, 857 S.W.2d 752,
754 (Tex. App.Corpus Christi 1993, writ denied); Johnson v. Sw. Newspapers Corp., 855 S.W.2d 182, 187 (Tex. App.Amarillo
1993, writ denied) (no controverting evidence found, because plaintiffs
affidavit argued failure to investigate, rather than actual malice).

            As part of its
summary judgment evidence, Telecheck submitted the affidavit of Stephen Moore
stating that it purchased the check as warrantor pursuant to its contract with
Harrahs, placed Watson in its database as someone having an unpaid debt
because of the stop-payment order, and that, at the time, it believed this
statement to be true and had no reason to doubt its veracity.  Here, however, in contrast to Johnson and similar cases, there is
evidence in the record that Watson repeatedly contacted Telecheck denying that
he owed the debt and informing them that Harrahs confiscated the funds for
which the check was written, thereby negating the debt itself.  So, here, there is evidence contradicting the
defense affidavits.  It is for the trier
of fact to resolve any dispute in the evidence as to the publication and the circumstances
under which the publication was made.  See First State Bank of Lyford v. Parker,
28 S.W.2d 269 (Tex. Civ. App.San Antonio 1930, writ dismd).

            Taking the
evidence favorable to Watson as true and indulging every reasonable inference
in his favor, as we must, we find that Telecheck and TRS have failed to
conclusively prove an absence of actual malice because a material fact is in
dispute.  See Nixon, 690 S.W.2d at 54849; McNamara, 71 S.W.3d at 311. 
Therefore, we sustain Watsons argument on this point.

(6)        There Is a Fact Issue Concerning When Watsons
Causes of Action Accrued

 

            Watson also
contends that the summary judgment was erroneous because Telecheck and TRS
failed to prove that Watsons suit was filed after the statutes of limitations
had expired on his claims of defamation, intentional infliction of emotional
distress, and violations of the FDCPA.

            A suit for
libel or slander must be brought within one year of the day the cause of action
accrues.  Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (Vernon 2002).  A claim for a violation of the FDCPA must be
brought within one year from the date on which the violation occurs. 15
U.S.C. § 1692k(d) (West, Westlaw 2010).  A
plaintiff must bring a claim for intentional infliction of emotional distress
within two years of the accrual of the cause of action.  Tex.
Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2010); Patrick v. McGowan, 104 S.W.3d 219 (Tex.
App.Texarkana 2003, no pet.).

            The
discovery rule is a very limited exception to statutes of limitations and
applies only in those cases in which the nature of the injury is both
inherently undiscoverable and objectively verifiable.  Wagner
& Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex. 2001).  The discovery rule exception operates to
defer the accrual of a cause of action until the plaintiff knows, or in the
exercise of reasonable diligence should know of the facts giving rise to the
claim.[5]  Id.  A defendant moving for summary judgment must
prove that there is no genuine issue of material fact as to when a plaintiff
discovers or should have discovered his or her cause of action.  See
KPMG Peat Marwick v. Harrison County Housing Fin. Corp., 988 S.W.2d 746,
748 (Tex. 1999).

            Here, it is
undisputed that, on or about August 4, 2003, Telecheck put Watson in its
database as a person with unpaid, check-related debt.  Nothing in the summary judgment record,
however, establishes how Watson knew or should have known of the event at that
time.  In responses to discovery, Watson
admitted that he had at least one check declined in each of 2003, 2004, and
2005.  The summary judgment record is
silent as to whether the merchants declining those checks subscribed to
Telechecks services or whether the merchants declined to accept the checks
because of a communication from Telecheck, not to mention whether Watson knew
of any linkage to Telecheck in those events.[6]  It is true that Watson was asked during a
previous hearing,  I think youve
testified earlier that youve known that youve been on the check data base for
some time now, about four years, right? 
Watson replied, Thats correct. 
Unclear from that exchange is whether Watson is testifying that he has
known of Telechecks negative listing for four years or whether he now knows
that he has been on Telechecks list for four years.

            We must
indulge every reasonable inference in Watsons favor, and we find that a
reasonable trier of fact could determine that Watson could not have reasonably
known of Telechecks listing until a later date within the applicable statute
of limitations.  See Nixon, 690 S.W.2d at 54849; McNamara, 71 S.W.3d at 311. 
Therefore, a material issue of fact exists concerning when Watson knew
or should have known facts that would cause limitations to begin running
against his causes of action. 
Accordingly, we sustain Watsons assertions on this point.[7]

            Accordingly,
as to Watsons alleged causes of action under the Consumer Credit Reporting Act
and for extrinsic fraud, we affirm the summary judgment in favor of defendants;
as to Watsons point of error for illegality of contract, we overrule it as
moot; and, as to all other causes of action asserted by Watson, we reverse the
summary judgment and remand this cause to the trial court for further
proceedings.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          August
9, 2010

Date Decided:             October
21, 2010











[1]Defendants
argued that Watsons claims for defamation were barred by truth, qualified privilege,
limitations, and laches.  They defended
his claims under Chapter 20 of the Texas Business and Commerce Code based on
the statute.  They asserted that his
claims for intentional infliction of emotional distress and violations of the
FDCPA were barred by limitations and that the claims for illegality and
extrinsic fraud were not preserved for our review.

 





[2]Tex. Bus. & Com. Code Ann. §§
20.01.13 (Vernon 2009).

 





[3]The
other asserted causes of action are defamation (whether simple or per se),
intentional infliction of emotional distress, and violation of the FDCPA.





[4]Due
to our ruling on this issue, we need not address Watsons claim that the
statements were made to persons not having an interest or duty in the matter.





[5]While
he does not explicitly state as much, Watsons arguments on this issue invoke
the discovery rule.





[6]In
his brief, Watson argues that he had a check declined February 10, 2006, and
that his cause of action could not have accrued before that date.  As conceded in Telechecks brief, however,
that date is not supported by the summary judgment record and was not before
the trial court for consideration at the time of the summary judgment ruling.





[7]Laches
does not apply here.  Generally, in order
to establish a laches defense, the defendants must show (1) the plaintiffs
unreasonably delayed in asserting their claim, and (2) the defendants have
detrimentally changed their position because of the delay.  Wayne
v. A.V.A. Vending, Inc., 52 S.W.3d 412, 415 (Tex. App.Corpus Christi 2001,
pet. denied); Green v. Parrack, 974
S.W.2d 200, 203 (Tex. App.San Antonio 1998, no pet.).  The contours of the defense of laches have
been described as follows:

 

The application of laches, however,
is usually limited to cases arising out of equity or actions at law that are
essentially equitable in character. Furthermore, this Court has held laches .
. .  [is] peculiarly available against
the assertion of equitable rights, and may not be invoked to resist the
enforcement of a purely legal right. 

 

Wayne, 52
S.W.3d at 415 (citations omitted).

                The
present case involves contractual claims and causes of action for defamation,
emotional distress, and statutory violationsall legal rights.  Watson has a complete, adequate, legal remedy
in the form of a suit for damages.  Here,
Watson seeks only a legal remedy, money damages.  This is a claim based in law, no specific
performance or injunctive relief is requested. 
We conclude that the defense of laches does not apply in this case.