# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-23-00042-CV

---

Michael Williams and Pearl 1 Services, LLC,
Appellant

v.

Jim Roche, Debra Roche, and Marie Willis,
Appellee

---

On appeal from the
40th District Court of Ellis County, Texas
Judge Bob Carroll, presiding
Trial Court Cause No. 108537

---

JUSTICE HARRIS delivered the opinion of the Court.

### MEMORANDUM OPINION

Michael Williams and Pearl 1 Services, LLC (collectively the "Pearl Group") sued Jim Roche, Debra Roche and Marie Willis (collectively the "MW Individuals"). The MW Individuals filed motions to dismiss pursuant to the Texas Citizens Participation Act ("TCPA")[1]. The Pearl Group filed a response to the MW Individuals's TCPA motions, attaching exhibits. The MW

---

[1] Marie Willis filed a separate, similar motion to dismiss subject to her special appearance.

Individuals filed a consolidated reply in support of their TCPA motions, containing objections to exhibits to the Pearl Group's First Amended Response to Defendants' TCPA Motion to Dismiss. The trial court granted the MW Individuals's motions to dismiss and sustained the MW Individuals's objections. The Pearl Group complains that the trial court erred by: (1) dismissing the Pearl Group's claims of defamation and business disparagement based on the Texas Citizens Participation Act; and (2) sustaining the MW Individuals's objections to the Pearl Group's evidence. We affirm.

## Background

The MW Individuals are employees and/or officers of the California company, MW Services, LLC ("MW Services"). Marie Willis ("Ms. Willis") is the President of MW Services. Jim Roche ("Mr. Roche") is a project manager, and Debra Roche ("Mrs. Roche") is an administrative assistant. MW Services contracted with the United States Air Force / Dyess Air Force Base to serve as the general or prime contractor for construction projects at Dyess Air Force Base (the "Projects"). MW Services hired Pearl 1 Services, LLC ("Pearl 1") to serve as a subcontractor for the Projects. Michael Williams is the President and owner of Pearl 1.

During the Projects, disputes arose between the Pearl Group, MW Services, and the MW Individuals regarding payments, the schedule, and the status of the Pearl Group's payments to Pearl 1 employees. Through the course of these disputes, communications and statements (the "Statements") were exchanged between the MW Individuals and third parties, including persons from the United States Air Force / Dyess Air Force Base, Pearl 1 employees, and Pearl 1's bonding company (the "Third Parties"). The Pearl Group sued the MW Individuals for defamation and business disparagement related to those Statements allegedly made by the MW Individuals to the Third Parties in connection with the Project.

The MW Individuals then moved to dismiss the Pearl Group's lawsuit under the TCPA. After a hearing, the trial court sustained the MW Individuals's objections to certain exhibits filed by the Pearl Group, granted the MW Individuals's TCPA motion to dismiss, and awarded the MW Individuals reasonable and necessary attorney's fees in the amount of $60,224.85, plus conditional fees in the event of appeals. Specifically, the trial court sustained the MW Individuals's objections to the Pearl Group's exhibits 5, 6, 7, 11, 12, 13, and to paragraphs 5, 9, 15, 20, 34, 41, 42, 43, and 44 of Mr. Williams's Amended Declaration ("Exhibits at Issue").

## The TCPA

In their first issue, the Pearl Group complains the trial court erred by granting the MW Individuals's motions to dismiss and awarding the MW Individuals attorney's fees under the TCPA. We disagree.

## Standard of Review

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Martin v. Walker*, 606 S.W.3d 565, 567 (Tex. App.—Waco 2020, pet. denied); *Holcomb v. Waller County*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). In reviewing the trial court's ruling, we "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). "We view the pleadings and evidence in the light most favorable to the nonmovant." *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied). In our review, the pleadings, especially the plaintiff's allegations, are the best evidence to determine the nature of a legal action and the applicability of the TCPA. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Reviewing such a motion requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving

party must show by a preponderance of the evidence that the TCPA properly applies to the "legal action" against it. *Id.* The movant bears the initial burden of demonstrating the legal action is based on or in response to the party's exercise of a protected right and, thus, the statute applies. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1). If the movant carries its step-one burden as to a claim, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of that claim. *See id.* § 27.005(c). If the nonmovant does not carry its burden, the claim must be dismissed. *See id.* § 27.005(b),(c). Even if the nonmovant carries its step-two burden, the movant can still obtain dismissal at step three by establishing an affirmative defense or other grounds on which it is entitled to judgment as a matter of law. *Id.* § 27.005(d).

**Application of the TCPA**

We first analyze whether the MW Individuals met their threshold burden. In their motions to dismiss, the MW Individuals alleged that the Statements made the basis of the Pearl Group's claims for defamation and business disparagement are a protected exercise of their right to free speech. Specifically, the MW Individuals alleged that the Statements constituted communications made in connection with a matter of public concern. As an initial matter, the Pearl Group does not assert in its pleadings, motions,

responses, or arguments to the trial court that the Statements were not communications made in connection with the matter of public concern or that the TCPA does not apply.[2]  Instead, the Pearl Group only argued that the commercial-speech exemption to the TCPA applies pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).  The Texas Supreme Court has previously noted that the commercial-speech exemption is wholly unnecessary unless the TCPA applies.  *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018).

The Pearl Group, for the first time, in its appellants' brief, alleged that the Statements were not the types of speech afforded protection under the TCPA because they were not on matters of public concern.  In response, the MW Individuals argued that the issue was not properly preserved.

The Fourteenth Court of Appeals has opined that nonmovants do not bear the burden to show the non-applicability of the TCPA because the movants have that burden under TEX. CIV. PRAC. & REM. CODE Ann. § 27.005. *Welsh v. River Hollow Ass'n*, 654 S.W.3d 505, 509 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); s*ee also Neely v. Allen*, No. 14-19-00706-CV, 2021 WL

---

[2] The attorney for the MW Individuals specifically states to the trial court that there is no dispute regarding the threshold issue of whether the MW Individuals have met their initial burden to show the TCPA applies by stating,  "there's been no contest in the pleadings that we've met that burden, and in looking at the plaintiffs' petition you can see that what he's accusing my clients of is communicating with the government related to irregularities on government contracts". Nowhere on the record does the Pearl Group disagree that the MW Individuals have met their burden in the first step of the TCPA analysis.

2154125, at \*4–5 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet. h.) (mem. op.). They have concluded that, as such, nonmovants do not need to preserve error regarding applicability of the TCPA. *Id.* While we are not inclined to wholesale agree to this proposition, we do note that the Supreme Court has opined that the TCPA casts a wide net and is to be construed liberally to fully effectuate its purpose and intent. *Adams v. Starside Custom Builders*, LLC, 547 S.W.3d 890, 894 (Tex. 2018); see *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). The Supreme Court in *Creative Oil* reviewed "matter-of-public-concern arguments" as properly before the court when those arguments were briefed for the first time on appeal to the Supreme Court. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 133 (Tex. 2019).[3]

Here, as nonmovant, the Pearl Group's challenge of the applicability of the TCPA in any manner, even if solely through its commercial-speech exemption argument, was enough to put the general applicability of the TCPA at issue and allow this Court to decide the TCPA's applicability based on a holistic review of the pleadings. *Id.* We turn to whether the MW Individuals have met their burden to show that the Statements made the basis of the Pearl

---

[3] The court in *Creative Oil* specifically notes that the appellant did not contend that the appellees waived or failed to preserve those arguments, so the court declined to find waiver sua sponte. The language of the Supreme Court does not go so far as to indicate that a nonmovant would never need to preserve error regarding the non-applicability of the TCPA. *Creative Oil*, 591 S.W.3d at 133.

Group's claims are communications made in connection with a matter of public concern. We consider whether communications are matters of public concern under a de novo standard of review. *Creative Oil*, 591 S.W.3d at 132.

The TCPA defines "matter of public concern" as "a statement or activity regarding: (a) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (b) a matter of political, social, or other interest to the community; or (c) a subject of concern to the public." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7). No more than a tangential relationship between the communication and the matter of public concern must be established. *ExxonMobil Pipeline Co*, 512 S.W.3d at 900.

The MW Individuals alleged that the Statements upon which the Pearl Group's claims are based are matters of public concern because they are communications between the MW Individuals and members of the United States military and a bonding company relating to specific government construction projects, implicating the use of the public's tax dollars and payments to workers on those projects. "Where the public's purse goes, so goes the public's concern." *Tex. Tribune, Inc. v. MRG Med. LLC*, No. 03-23-00293-CV, 2024 WL 2305265, at *3 (Tex. App.—Austin May 22, 2024, pet. denied)

citing *PNC Inv. Co. v. Fiamma Statler*, LP, No. 02-19-00037-CV, 2020 WL 5241190, at *5 (Tex. App.—Fort Worth Sept. 3, 2020, no pet.) (mem. op.).

In analyzing and ultimately concluding that communications did not involve matters of public concern, the Dallas Court of Appeals in *Ojala* notes that it would have been persuaded that communications were matters of public concern if they were made directly to a governmental entity or if they were made about a specific government project. *Ojala Partners, LP v. Driesse*, No. 05-22-00009-CV, 2023 WL 1878881, at *4 (Tex. App.—Dallas Feb. 10, 2023, no pet.). In the case before us, the Statements are both. We do not go so far as to conclude that all speech directed to any officials with the U.S. Military is automatically a matter of public concern as the Pearl Group has hyperbolized, but we agree with the trial court that the MW Individuals have shown at least a tangential relationship between the Statements at issue and the use of public tax funds on specific government projects. Accordingly, we conclude that the MW Individuals have shown by a preponderance of the evidence that the Statements are connected to matters of public concern and that the TCPA applies.

**MW Individuals's Entitlement to Dismissal**

Because the TCPA applies, the burden shifts to the Pearl Group to establish by clear and specific evidence a prima facie case for each essential

element of their claims. *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018). Even if the Pearl Group could establish each element, the MW Individuals would still be entitled to a dismissal if they prove the essential elements of a valid affirmative defense by a preponderance of the evidence. *Id.*

Texas Courts will often analyze a party's entitlement to dismissal under the TCPA through an affirmative defense without first considering whether a party establishes a prima facie case for each essential element of their claims. *Youngkin*, 546 S.W.3d at 681 (assuming without deciding nonmovant met his step-two burden in concluding movant was entitled to dismissal because he established an affirmative defense); *Watson v. Hardman*, 497 S.W.3d 601, 608–09 (Tex. App.—Dallas 2016, no pet.) (concluding TCPA movant established affirmative defense to defamation without first considering whether nonmovant met his step-two burden).

Although the Pearl Group asserted that it produced enough clear and specific evidence to raise a prima facie case on every element of its claims against the MW Individuals, we need not determine whether the Pearl Group established a prima facie case for each element of its claim before jumping to our step-three analysis. *See Mishkoff* v. Garrett, No. 05-22-01063-CV, 2024 WL 770142, at *4 (Tex. App.—Dallas Feb. 26, 2024, pet. denied). We will first consider the affirmative defenses that MW Individuals asserted in their TCPA

motion. *See Namdar v. Suprun*, No. 05-24-00193-CV, 2024 WL 4763279, at \*3 (Tex. App.—Dallas Nov. 13, 2024, no pet. h.).

MW Individuals asserted several affirmative defenses. The trial court's order granting the TCPA motion did not specify the judge's reasons for granting it. A general order, like the one in this case, triggers a presumption that the trial judge considered every ground asserted by the movant. *Anderson v. Goodwin*, No. 05-23-00343-CV, 2024 WL 725669, at \*4 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op.) citing *Morales v. Barnes*, No. 05-17-00316-CV, 2017 WL 6759190, at \*5 (Tex. App.—Dallas Dec. 29, 2017, no pet.) (mem. op.) (noting that we presume the trial judge considered all grounds if the judge does not specify the reasons for an order); also citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (affirming general summary-judgment order because it could have been based on a summary-judgment ground the appellant did not challenge).

Amongst the several affirmative defenses pled, the MW Individuals asserted and argued the affirmative defense of qualified privilege to each of the Pearl Group's claims, i.e., defamation and business disparagement. The MW Individuals alleged they had a qualified privilege because the Statements were made to the Third Parties with whom they shared a mutual interest in the Projects. The MW Individuals asserted that they made Statements related to

the payment of workers on the Projects and delays of the Projects, and made those Statements because the MW Individuals had duties to MW Services and the United States Air Force, as well as corresponding interests in the Project.

"Qualified privileges against defamation exist at common law when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication." *Cain v. Hearst Corp.,* 878 S.W.2d 577, 582 (Tex. 1994). Stated differently, a qualified privilege extends to statements made in good faith on a subject in which the maker has an interest or duty to another person having a corresponding interest or duty. *Leatherman v. Rangel*, 986 S.W.2d 759, 762 (Tex. App.—Texarkana 1999, pet. denied).

No where in the record prior to the Pearl Group's reply brief does the Pearl Group contest that the MW Individuals had an interest or duty to the Third Parties who had a corresponding interest or duty to whom the Statements were made. Said differently, the Pearl Group did not dispute, and the Pearl Group seemingly agreed that the MW Individuals had qualified privilege to make statements relating to the Projects so long as the statements were not false.[4] The Statements made by the MW Individuals were made only

---

[4] During the hearing on the TCPA motions, the Pearl Group's attorney stated, "[the MW Individuals] absolutely can say whatever they need to within the contract, but if what they're saying is a false statement, there is no privilege."

to the Third Parties, all of whom either performed work on the Projects or had a financial involvement in the Projects, and thereby had a shared duty and interest, with the MW Individuals, in the completion and financial success of the Projects. We find that the MW Individuals established that the Statements derive from and relate to topics of common interest (i.e., the Pearl Group's contracts with MW Services, work on the Projects, and payments relating to the contracts and Projects) sufficient enough to make the Statements privileged.

The burden then falls to the Pearl Group to establish that privilege was lost. Once a defendant establishes that a communication is conditionally or qualifiedly privileged, the plaintiff must then show that the privilege is lost. *Steinhaus v. Beachside Envtl., LLC*, 590 S.W.3d 672, 678 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). A business disparagement claim is similar in many respects to a defamation action, and a Plaintiff must show that a defendant published false and disparaging information without privilege. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). The Pearl Group argues that the MW Individuals made the Statements with actual malice and thereby lost the qualified privilege protection. "Proof that a statement was motivated by actual malice existing at the time of publication

defeats the privilege." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995).

Accordingly, no matter whether it is couched in terms of the Pearl Group's burden to prove the affirmative defense of qualified privilege was lost or in the Pearl Group's burden to show proof of each element of its cause of action, the case turns on the existence of privilege and more specifically, whether the MW Individuals made the Statements in good faith without actual malice. The Pearl Group must show that the MW Individuals exercised actual malice by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. They have not met their burden.

"Actual malice" means that the statement was made with knowledge of its falsity or with reckless disregard for its truth. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). The falsity of the statement itself cannot prove actual malice. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 125 (Tex. 2000). There is no evidence that the MW Individuals made Statements that they knew were false. The Pearl Group alleged that the MW Individuals made seven false Statements: (1) that the Pearl Group owed money to Cody McCann; (2) that the Pearl Group was partners with or in a joint venture with Cody McCann; (3) that the Pearl Group failed to pay Pearl 1's employees; (4) that Michael Williams had fraudulently altered an email, was trying to impersonate Marie

Willis, and was trying to intimidate a former employee; (5) that Pearl 1 was in violation of its contractual obligations; (6) that the Pearl Group had tried to damage MW Individuals's relationship with customers which the MW Individuals deemed "criminal"; and (7) that the MW Individuals had won a judgment against Williams in court.

Regarding Statements 1-3, the Pearl Group asserted that the Pearl Group's judgment obtained against Cody McCann proves the falsity of those Statements; however, the referenced judgment appears to be an uncontested, potentially default, judgment obtained by the Pearl Group on May 26, 2021. The evidence reflects that Statements 1-3 were made approximately a year prior to that judgment, so that judgment does not provide any evidence to support a showing that the MW Individuals knew Statements 1-3 were false at the time they were made. The Pearl Group alleged that the MW Individuals knew that Statements 1-3 were false because Michael Williams told the MW Individuals that they were false. A self-serving denial does not show that the MW Individuals spoke with knowledge of the falsity of the Statements or reckless disregard for the truth. "The mere fact that a defamation defendant knows that the public figure has denied harmful allegations or offered an alternative explanation of events is not evidence that the defendant doubted the allegations." *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 427

(Tex. 2000). Although the Pearl Group is not a public figure, the logic still holds true. A denial by the Pearl Group that what was being told to the MW Individuals about the Pearl Group was false is not enough to establish that the MW Individuals believed the Pearl Group's denial or knew Statements 1-3 to be false at the time they were made. Further still, the email correspondence between MW Individuals, particularly Jim Roche, and the Third Parties, on which the Pearl Group relies as evidence of its claims, shows that Jim Roche identified Statements 1-3 were in dispute. No evidence of actual malice exists relating to Statements 1-3.

The Pearl Group's claims stemming from Statement 4, result from a single email thread in which, motive aside, Michael Williams did include the signature of Marie Willis in a correspondence from the Pearl Group to Cody McCann. While the MW Individuals's interpretation and description of the email thread and use of Marie Willis' signature may be disputed or technically inaccurate, Statement 4 is not categorically false. Nor can it be said that the MW Individuals knowingly made false Statements regarding the Pearl Group's use of Marie Willis' signature.

Turning to Statements 5-6, wherein the Pearl Group alleged that the MW Individuals stated that the Pearl Group had violated the terms of the contract that the Pearl Group tried to criminally damage MW Individuals's

relationship with customers, we can find neither clear and specific evidence that such assertions by the MW Individuals were false nor evidence that such assertions were known by the MW Individuals to be false. The evidence shows that there is an ongoing contract dispute between Pearl 1 and MW Services in some stage of arbitration separate from this proceeding.[5] We place no more weight on the Pearl Group's version of events than the MW Individuals's version of events in what amounts to a construction contract dispute. The Pearl Group has only shown that a civil dispute exists between the parties with complaints of one against the other arising from different positions as to their contractual arrangement. The Pearl Group did not provide clear and specific evidence that the MW Individuals's Statements regarding the Pearl Group's performance and violations relating to the Projects are demonstrably false. The Pearl Group has shown evidence that the Statements amounted contract disputes and differing opinions or characterizations surrounding the dissolution of the parties' relationship on the Projects, but the Pearl Group has not shown malice.

Finally, the Pearl Group did not provide enough evidence to establish that any of the MW Individuals even made Statement 7. The sole email from which this claim seems to be derived is addressed from a Third Party to the

---

[5] This Court has no desire to invade the province of an arbitration panel by making a factual determination in a contractual dispute.

MW Individuals and does not attribute the assertion that "MW Services took Mr. Williams to court and won" to any particular person. There is not clear and specific evidence connecting that assertion to the MW Individuals.

In sum, the Pearl Group has not shown evidence that the MW Individuals made any Statements to the Third Parties with actual malice.

**Exhibits at Issue**

The Pearl Group raised the issue that the trial court erred when it sustained the MW Individuals's objections to the Pearl Group's exhibits 5, 6, 7, 11, 12, 13, and to paragraphs 5, 9, 15, 20, 34, 41, 42, 43, and 44 of Mr. Williams's Amended Declaration. Even if the trial court abused its discretion in ruling on the admission or exclusion of certain evidence, reversal is only appropriate if the error was harmful—that is, it probably resulted in an improper judgment. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). A successful challenge to evidentiary rulings usually requires the complaining party to show that admission of the challenged evidence probably resulted in an improper outcome—usually by showing that the court's ruling turns on the particular evidence excluded or admitted. *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (citing TEX. R. APP. P. 44.1, 61.1). The Pearl Group has not specifically argued or shown that the exclusion of the Exhibits at Issue led to an improper judgment.

Even assuming without deciding that all of the Pearl Group's exhibits were admissible in their entirety, there is still no clear and specific evidence in the record that the MW Individuals made the Statements at issue with actual malice. Without such evidence, the Pearl Group cannot successfully negate the MW Individuals's affirmative defense of privilege, nor can the Pearl Group establish a prima facie case for its claims of defamation or business disparagement as required by the TCPA. We hold that that the trial court did not err in granting the MW Individuals's TCPA motions to dismiss. Likewise, because we have considered all evidence submitted by the Pearl Group and still conclude that the trial court did not err in granting the MW Individuals's TCPA motions to dismiss, any error relating to the trial court's sustaining of the MW Individuals's objections to the Pearl Group's evidence is harmless. *See* TEX. R. APP. P. 44.1.

**Attorney's Fees**

Section 27.009 mandates that if an action is dismissed under the TCPA, the trial court "shall award to the moving party court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require," as well as sanctions "sufficient to deter" future "similar actions." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a). The Pearl Group in its brief argued that the amount of attorney's fees awarded

to the MW Individuals by the trial court was unreasonable. The Pearl Group stated that the fees incurred by the Pearl Group are significantly less than those awarded to the MW Individuals but otherwise provided no arguments and cited no law to support its complaint that the amount of attorney's fees awarded was unreasonable or improper. This issue is inadequately briefed and presents nothing for review. TEX. R. APP. P. 38.1; *Batto v. Gafford,* 119 S.W.3d 346, 350 (Tex. App.—Waco 2003, no pet.). We, therefore, affirm the trial court's award of attorney's fees.

## Conclusion

We affirm the judgment of the trial court.

LEE HARRIS
Justice

OPINION DELIVERED and FILED: June 26, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
CV06

